UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT LAKES CONSORTIUM, a
consortium of Michigan public school
districts,

        Plaintiff,

v.

STATE OF MICHIGAN, et al.,

        Defendants.
                                        /

File No.  5:06-CV-187

HON. ROBERT HOLMES BELL

## **OPINION**

      This is an action filed by Great Lakes Consortium against the State of Michigan, its Department of Education ("MDE") and Department of Management and Budget ("DMB"), collectively, the "State of Michigan Defendants" or "State Defendants."  The action originally was filed in the Traverse County, Michigan, Circuit Court and was removed to this Court on November 16, 2006 by the State Defendants.  Contemporaneously with the filing of the complaint, Plaintiff filed a motion for temporary restraining order and preliminary injunction.  The action was removed before the state court acted on the motion.  Following removal, on November 21, 2006, the Court granted the temporary restraining order and issued an order to show cause why a preliminary injunction should not issue, setting a hearing on November 30, 2004.  On November 27, 2006, Northern Warehousing, Inc. sought stipulated leave to intervene as a Defendant, which was granted on November 28, 2006.  Also on November 28, 2006, Plaintiff and the State Defendants filed a proposed stipulated order to

adjourn the show cause hearing, to modify certain provisions of the temporary restraining order, and to continue the temporary restraining order until an adjourned date to be determined by the Court. The Court signed the order granting the stipulation and adjourning the show cause hearing until February 1, 2007. On December 5, 2006, Northern filed an answer to the complaint. On December 19, 2006, Northern filed an emergency motion for hearing and to expedite the show cause hearing (Docket #16). The Court granted the motion on December 20, 2006, setting the instant emergency hearing for December 22, 2006 at 8:30 a.m.

Upon review of the verified complaint and attached exhibits, the briefing and exhibits of all parties, and the argument presented in open court on December 22, 2006, the Court will deny Intervenor Defendant's motion to vacate the temporary restraining order. The Court will continue the temporary restraining order as a preliminary injunction. The Court will further deny Northern's request to expedite a full evidentiary hearing on the preliminary injunction, which will remain scheduled for February 1, 2007.

**I.**

Plaintiff Great Lakes Consortium is a cooperative consortium administered by the Traverse City Area Public Schools and including 260 public school districts, jointly performing school district food service functions under Section 11a(4) of the Michigan Revised School Code, MICH. COMP. LAWS § 380.11a(4). Great Lakes engages in the processing, warehousing, and delivery of federal surplus food commodities for student meals

under the National School Lunch Act ("NSLA"). For the 2006-07 school year, Great Lakes would be responsible for $12,362,616.80 of commodity entitlements.

The MDE's Office of School Support Services oversees and administers various food distribution programs, including the distribution of federal surplus commodity foods under the NSLA and its implementing regulations. Each year the USDA delivers to each state an amount calculated by statutory formula. 42 U.S.C. § 1755(b), (c). The State is a "distributing agency" under the NSLA. *See* 7 C.F.R. § 250.3. Great Lakes is a "school food authority," "recipient agency," "distributing agency," and "contracting agency" under the NSLA. *Id.* Because of its size, Great Lakes is able to directly receive shipments from the USDA, rather than have those shipments come through the state first.

Northern and the State entered into a requirements contract, under which Northern was retained by MDE as the primary distributor of commodities in Regions 1 and 3 in the State. The contract (Comp. Ex. A-3) provided, however, that "some recipients may have sufficient volume as to allow direct shipment from USDA. Direct shipment to recipients shall be at the discretion of MDE." (*Id.*, Sec. II-A.)

On December 23, 2004, Northern sued the State Defendants, Great Lakes, and SPARC (another public school cooperative) in the Michigan Court of Claims, asserting promissory estoppel and various tort claims against the MDE and State and further asserting that Great Lakes was an illegal entity. On January 14, 2005, Great Lakes and SPARC were dismissed from the litigation by stipulation. The litigation continued, and the Court of Claims issued a preliminary injunction requiring the State to cease and desist administering

3

Great Lakes and other public school food cooperatives, except for the 15 original pilot program members previously existing. (Compl. Ex. A-7.) The Court of Appeals affirmed. (Compl. Ex. A-8.) However, on May 24, 2006, the Michigan Supreme Court summarily reversed, holding that a claim of promissory estoppal was not cognizable on a contract with an integration clause. (Compl. Ex. A-9.) The Supreme Court stayed the injunction and remanded. On remand, the Court of Appeals, after considering the remaining claims, denied the injunction. (Compl. Ex. A-10.) Thereafter, on October 30, 2006, the Court of Claims granted Defendants' motion for summary judgment. (Compl. Ex. A-11.)

After winning in the court of claims, the State entered into a Resolution Agreement with Northern, under which Northern waived its rights to appeal. The State granted Northern a 54% increase in its contract price for delivery during the remaining period of the contract. Paragraph 5 of the Resolution Agreement provided as follows:

> 5. <u>School Districts Subject to Price Increase</u>
>
> Attachment A identifies the school districts that will be serviced by Northern Warehousing, Inc. for the remaining duration of Contract No. 071B2001531. The identified districts are subject to the price increase.

(Compl. A-13.) Attachment A to the Resolution Agreement, however, mistakenly identified all school districts in Regions 1 and 3, including the school districts that were part of a cooperative, the very issue the State had just litigated and won. Although it does not affirmatively dispute that the attachment was a mutual mistake, Northern has taken the position that it is entitled to make all deliveries in the regions and that the State cannot authorize direct shipments to Great Lakes and other cooperatives.

4

After Northern advised the State Defendants of its position, on October 23, 2006, the MDE issued a memorandum to all school districts in Regions 1 and 3, stating that it had made an "inadvertent error" and that, in light of Northern's argument, all districts in Regions 1 and 3 were required to obtain commodities from Northern. (Compl. Ex. A-14.) The MDE then ceased authorizing the direct shipments to Great Lakes.

On November 10, 2006, Great Lakes filed the instant action in the Traverse County Circuit Court.

## II.

Pursuant to FED. R. CIV. P. 65(b), "every temporary restraining order granted without notice . . . shall expire by its terms within such time after entry, not to exceed 10 days . . . unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period." A temporary restraining order, like a preliminary injunction in general, is an equitable remedy, the purpose of which is to maintain the relative positions of the parties until proceedings on the merits can be conducted. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). In evaluating a request for injunctive relief pursuant to Federal Rule of Civil Procedure 65(b), the Court must balance the following equitable factors: 1) whether the plaintiff has a strong likelihood of success on the merits; 2) whether an injunction will save the plaintiff from irreparable harm; 3) whether the injunction will cause substantial harm to a third party; and 4) whether the injunction will serve the public interest. *Chabad of*

*Southern Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004).

A proper consideration in the decision to grant preliminary injunctive relief is the good faith of the parties concerned. The doctrine of unclean hands is based on the principle that "since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." *Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998). "[W]hile equity does not demand that its suitors shall have blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy at issue." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945). *See also J-Rich Clinic, Inc. v. Cosmedic Concepts, Inc.*, 98 F. App'x 444, 447 (6th Cir. 2004).

  A. <u>Likelihood of Success on the Merits</u>

In its complaint, Great Lakes raises six grounds for relief: (1) the Resolution Agreement is an ultra vires contract, not properly authorized by the MDE, and the DMB lacks authority to bind Great Lakes and its members under MICH. COMP. LAWS 18.1101, *et seq.*; (2) tortious interference with advantageous business relationships; (3) violation of NSLA rights; (4) denial of due process under the Michigan Constitution by terminating Great Lakes' statutory and contractual rights; (5) denial of equal protection under the Michigan Constitution; and (6) mandamus.

Looking to the single federal cause of action, the NSLA requires the Michigan Department of Education to manage funds disbursed by the USDA for reasons including

6

processing, distributing, transporting and storing agricultural commodities on behalf of school district NSLA program participants. 42 U.S.C. § 1757. By federal law, Defendants must consult with local schools regarding selection and distribution of commodity assistance. 42 U.S.C. § 1762a. Plaintiff, in its status as a "contracting agency" under NSLA and the underlying regulations, is entitled to enter into food processing contracts and distribution contracts. 7 C.F.R. §§ 250.3, 250.24, 250.30(b). It also is a "distributing agency" under the regulations. 7 C.F.R. §§ 250.3, 250.12, 250.24, 250.48. Defendants act as the administrators of the USDA's NSLA commodity programs. By unilaterally terminating Plaintiff's commodity functions for its member districts, Defendants arguably violate Plaintiff's rights under the NSLA and its underlying regulations.

In addition, both the tortious interference with business relationships and the due process claims appear well supported. To prove a claim for tortious interference with advantageous business relationship, a party must show "the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff." *Badiee v. Brighton Area Schools*, 695 N.W.2d 521, 538 (Mich. Ct. App. 2005) (citing *Mino v. Clio School Dist.*, 661 N.W.2d 586, 597-98 (Mich. Ct. App. 2003); *BPS Clinical Laboratories v. Blue Cross & Blue Shield of Michigan (On Remand)*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996)). Here, Plaintiff squarely alleges intentional conduct by the State in terminating direct delivery of shipments to Plaintiff. Although the State argues that its agreement to the terms

of the Resolution Agreement was not intentional, it does not dispute that the memorandum of the MDE ordering all districts to deal solely with Northern clearly was an intentional act. The State's mistake in signing the Resolution agreement unquestionably placed it on the horns of the dilemma, but the State intentionally sought to resolve that dilemma at Plaintiff's expense. The remaining elements of the intentional-interference-with-business-relationship claim are equally well supported by the verified allegations and the attached affidavits and they are undisputed by the State.

Plaintiff also has alleged a proper claim under the Due Process Clause of the Michigan Constitution.

> Both the Michigan Constitution and the United States Constitution preclude the government from depriving a person of life, liberty, or property without due process of law. U.S. Const., Am. XIV; Const. 1963, art. 1, § 17; *Hinky Dinky Supermarket, Inc. v. Dep't of Community Health*, 261 Mich. App. 604, 605-606, 683 N.W.2d 759 (2004). The principle of fundamental fairness is the essence of due process. *In re Adams Estate*, 257 Mich. App. 230, 233-234, 667 N.W.2d 904 (2003). Due process is a flexible concept, however, and determining what process is due in a particular case depends on the nature of the proceeding, the risks and costs involved, and the private and governmental interests that might be affected. *Genesco, Inc. v. Dep't of Environmental Quality*, 250 Mich. App. 45, 56, 645 N.W.2d 319 (2002). Generally, due process in civil cases requires notice of the nature of the proceedings and an opportunity to be heard in a meaningful time and manner by an impartial decisionmaker.

*By Lo Oil Co. v. Department of Treasury*, 703 N.W.2d 822, 831 (Mich. Ct. App. 2005) (internal quotations omitted). Here, Plaintiff consortium had the right under both federal and state law to receive direct shipments from the USDA and to enter into contracts to process and distribute those food products to its member schools. The State had just litigated and

8

prevailed on the question of whether its contract with Northern reserved Plaintiff's right to receive those shipments. The State, however, without notice to Plaintiff, inadvertently compromised that right through the Resolution Agreement and then acted intentionally, unilaterally and without notice to terminate Plaintiff's rights. Plaintiff therefore appears to have substantial likelihood of success on the merits of its due process claim.

Without addressing all six of the claims, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of at least several of its claims.

B.  Irreparable Harm to Plaintiff

Plaintiff Great Lakes does over $12 million in annual commodity business for its members. According to the verified facts of the Complaint and its supporting affidavit, during the pendency of the state proceedings and the state-court preliminary injunction, Great Lakes lost substantial revenues that would habe been generated by those commodity transactions. The State's action to cease its obligations to Plaintiff in order to fulfill its mistaken obligations to Northern will resume significant forfeitures of commodities by Plaintiff and its members, disrupting contractual arrangements with processors and distributors. Neither the State nor Northern have challenged either the immediacy or seriousness of the harm to Great Lakes caused by the MDE's October 23, 2006 memorandum. As a result, the Court finds Plaintiff and its members will be irreparably harmed absent continuation of the temporary restraining order as a preliminary injunction.

C.  Substantial Harm to Third Party

Neither the State Defendants nor Northern will suffer irreparable harm as the result of the preliminary injunction. By the State's own admission, the contract language upon which Northern bases its claim for distribution rights was entered only through clerical mistake. After April 2006, when the Michigan Supreme Court vacated the preliminary injunction barring the State from servicing Plaintiff cooperative, Northern had no legal right to continue to distribute to consortium members. Moreover, in September 2006, when the Court of Claims granted summary judgment to the State on Northern's civil action, Northern had no expectation that it would be entitled to service Plaintiff and its members absent significant passage of time and limited likelihood of success on appeal. As a result, the status quo until the State's unilateral order was that the Consortium had the right to service its members and Northern had no exclusive right to distribute to those members. Issuance of the injunction will merely return both the State and Northern to their expectations when they entered into the Resolution Agreement: a 54% increase in price paid to Northern, but only for those districts not within Plaintiff consortium.

At oral argument, the Court pressed Northern on the negotiation of the Resolution Agreement and on Northern's understanding about the districts the parties intended to include in Attachment A. While counsel for Northern made vague representations that Northern did not know the final list of schools for which the parties intended the 54% increase, at no time, either in its pleadings or at oral argument, did Northern affirmatively assert that, during negotiations, it understood that the State had promised to grant Northern the exclusive right

10

to service all districts in Regions 1 and 3, including those districts within Plaintiff cooperative. Further, counsel for Northern stated that, upon seeing the list, Northern asked the State whether the list was correct and asked the State to initial each page, undoubtedly because the list was far more generous than Northern anticipated. In sum, no serious question has been raised that, regardless of the enforceability of the contract, the list attached as Attachment A was a mistake. It is equally apparent that, rather than experiencing a substantial harm, Northern is merely being returned to the agreement apparently negotiated. Even if it may hold the State liable for damages for breach of the Resolution Agreement, Northern cannot demonstrate that it would be substantially harmed by the inability to deliver to Plaintiff members.

Moreover, it appears to this Court that Northern strongly suspected an error in contracting yet did not mention the error to the State and proceeded to take advantage of the State's error to its own advantage. Northern therefore does not come before this Court with clean hands. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1383 (6th Cir. 1995). The unclean-hands doctrine, like other equitable defenses, is appropriately considered by a court in determining whether to issue a preliminary injunction. *Id.* The doctrine is applied when a party seeking relief before the Court has itself engaged in misconduct related to the matter in litigation. *Id.* Although Northern may have an enforceable contract with the State, it's claim that it is being substantially harmed by being

11

denied the right to actually service the Consortium districts (as opposed to receiving damages for breach of contract) is unpersuasive.[1]

Further, the history of this case indicates that the State of Michigan Defendants, in consultation with Northern, consented to a modification of the TRO, entering into a stipulation to continue the TRO and delay the preliminary injunction hearing. The stipulation made specific changes to the TRO in order to protect Northern's interests. The modified TRO clearly reflected Northern's involvement in the negotiation of that agreement. In addition, the records submitted by Plaintiff make clear that Northern was a party to the modification, even if, as a party not yet permitted to intervene in the case, it did not sign the stipulation. Indeed, counsel for Northern conceded that Northern had participated in and agreed to the modification to the TRO. The order delaying the preliminary injunction hearing and continuing the TRO as modified was entered by this Court on November 30, 2006. While Northern filed an answer to the complaint on December 5, 2006, it took no action to challenge the TRO until filing an emergency motion on December 19, 2006.

---

[1]Because of the existence of an integration clause, the mistaken attachment to the Resolution Agreement may be enforceable notwithstanding the mistake and possible silent fraud by Northern. *See Lash v. Allstate Ins. Co.*, 532 N.W.2d 869 (Mich. Ct. App. 1989). However, the Court observes that there remains a significant question whether Paragraph 5 of the Resolution Agreement grants Northern the *exclusive* right to service all of the listed school districts. Indeed, the provision makes no reference to exclusivity and, instead, purports to identify those school districts subject to the price increase set forth in the Resolution Agreement. The Court is not persuaded that the language of the provision entitles Northern to make all commodities deliveries to the listed school districts or that the State is precluded from allowing direct deliveries to Great Lakes. The express term appears only to identify the districts that Northern has a right to service and that will be obligated to pay the increased price if so serviced.

The equitable defense of laches is applicable to a Court's consideration of a request for preliminary injunction.  *See* 11A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2946 (2d ed. 1995).  Where, as here, Northern reserved its motion to challenge the stipulated continuation of the TRO until some three weeks after its entry, and until the eve of the Christmas holidays, the immediacy of Northern's claimed hardship is not credible.

For all the stated reasons, the Court finds that continuation of the TRO as modified as a preliminary injunction will not cause substantial harm to Northern.

D.     Public Interest

Plaintiff Great Lakes does over $12 million in annual commodity business for its members, which are local school districts.  The State's action to cease its obligations to Plaintiff in order to fulfill its mistaken obligations to Northern will resume significant forfeitures of commodities by those member school districts.  In order to avoid those forfeitures, those member districts will be forced to pay a dramatically inflated cost to Northern for the commodities they receive.  Further, the affidavits attached to the complaint support a finding that Northern is unable to adequately serve all of the districts within the region during the current, heaviest demand of the school year.  As a result, because Plaintiff's 260 member-districts will both forfeit surplus commodities and pay more for those they receive, the public interest will be significantly harmed by the refusal to issue an injunction.

### III.

Federal Rule of Civil Procedure 65(d) states that "no restraining order of preliminary injunction shall issue except upon the giving of security by the applicant . . . ." *Id.* "While . . . the language of Rule 65(d) appears to be mandatory, and many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security." *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (citing *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978); *Urbain v. Knapp Bos. Manuf. Co.*, 217 F.2d 810, 815-16 (6th Cir. 1954).

In the instant case, the State of Michigan acknowledges its own responsibility for the competing financial hardships in issue in this action. Plaintiff has brought claims solely against the State of Michigan, and the State has itself consented to the continuation of the injunction in issue without security. Further, any financial consequences to Northern have been the subject of negotiations under which the State recognizes its own responsibility to pay. As a result, security from Great Lakes would appear to serve no purpose. The Court therefore waives the security requirement of Rule 65(d).

### IV.

For the foregoing reasons, Northern's motion to vacate the temporary restraining order issued by this Court on November 21, 2006 and modified by stipulation on November 28, 2006 is **DENIED**. The temporary restraining order as previously modified is hereby continued as a preliminary injunction pending full evidentiary hearing on February 1, 2007.

An Order consistent with this Opinion shall issue.


Dated:   December 29, 2006              /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT JUDGE