UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREAT LAKES CONSORTIUM, a
consortium of Michigan public school
districts,

        Plaintiff,

v.

        File No. 5:06-CV-187

        HON. ROBERT HOLMES BELL

STATE OF MICHIGAN, et al.

        Defendants.
_____/

**OPINION**

This is an action filed by Great Lakes Consortium against the State of Michigan, its Department of Education ("MDE") and Department of Management and Budget ("DMB"), collectively, the "State of Michigan Defendants" or "State Defendants." The action originally was filed in the Traverse County Circuit Court and was removed to this Court on November 16, 2006 by the State Defendants. Contemporaneously with the filing of the complaint, Plaintiff filed a motion for temporary restraining order and preliminary injunction. The action was removed before the state court acted on the motion. Following removal, on November 21, 2006, the Court granted the temporary restraining order and issued an order to show cause why a preliminary injunction should not issue, setting a hearing on November 30, 2006. On November 27, 2006, Northern Warehousing, Inc. sought stipulated leave to intervene as a Defendant, which was granted on November 28, 2006. Also on

November 28, 2006, Plaintiff and the State Defendants filed a proposed stipulated order, to which Northern had consented, to adjourn the show cause hearing, to modify certain provisions of the temporary restraining order, and to continue the temporary restraining order until an adjourned date to be determined by the Court. The Court signed the order granting the stipulation and adjourning the show cause hearing until February 1, 2007. On December 5, 2006, Northern filed an answer to the complaint. On December 19, 2006, Northern filed an emergency motion for hearing and to expedite the show cause hearing.

The Court granted the motion for expedited hearing and, on December 29, 2006, upon consideration of the briefing and arguments raised at the hearing, continued the TRO as a preliminary injunction, pending a full evidentiary hearing. That hearing was held on February 16, 2007 and continued on March 16, 2007. Intervenor Defendant's request to terminate the preliminary injunction is now before the Court.

Meanwhile, after the first day of evidentiary hearing, Intervenor Defendant Northern Warehousing filed a motion to dismiss the federal claim for failure to state a claim, for the first time arguing that no private right of action exists under the National School Lunch Act (NSLA).[1] Also during that period, Plaintiff filed a first motion to amend the complaint to add a reformation-of-contract claim, which was denied by the Magistrate Judge because he believed the federal ground was likely to be dismissed for failing to state a private right of

---

[1]The Court notes that neither the State nor the Intervenor Defendant raised the issue in its answer or in its response to the motion for preliminary injunction.

action.  The Magistrate Judge declined to consider amendment to add another state-law claim.  The Magistrate Judge expressed surprise that the largely state-law action was before the federal court due to the State's Eleventh Amendment immunity, though he acknowledged removal by the State had probably effected a waiver.  However, he expressed substantial concern that the state-law claims for injunctive relief were beyond the scope of this Court's jurisdiction, citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89 (1984).  The Magistrate Judge therefore ordered briefing on the propriety of this Court retaining jurisdiction over the state-law claims, regardless of whether a private right of action exists under the NSLA.  The Magistrate Judge denied without prejudice the first motion to amend the complaint.

This Court subsequently ordered expedited briefing on the motion to dismiss and the *Halderman* issue and directed the parties to be prepared to argue those issues at the time set for evidentiary hearing.  Two days before the hearing, Plaintiff filed a second motion to amend the complaint, seeking to add a federal due process claim as well as the state contract reformation claim previously proposed.  The State stipulated to the amendment, though Northern Warehousing opposed the motion.  All three parties have filed briefs relating to the issues, though Northern had not yet had an opportunity to file a brief in opposition to the motion to amend.

At the time set for the second portion of the evidentiary hearing, the Court heard oral argument on the motion to dismiss the NSLA claim and the jurisdiction of this Court over

the state-law claims under *Halderman*, 465 U.S. 89. Intervenor Defendant also specifically waived its right to file a brief in response to Plaintiff's motion to amend the complaint and requested the right to argue that motion at the evidentiary hearing. The Court therefore also heard argument on Plaintiff's second motion to amend the complaint. All three matters are now before the Court. For the reasons that follow, the Court will dissolve the preliminary injunction, grant the motion to dismiss the NSLA claim, and deny Plaintiff's motion to amend as futile. The remaining state-law claims will be remanded to the Traverse County, Michigan, Circuit Court.

## I.

Plaintiff Great Lakes Consortium is a cooperative consortium administered by the Traverse City Area Public Schools and includes 260 public school districts, jointly performing school district food service functions under Section 11a(4) of the Michigan Revised School Code, MICH. COMP. LAWS § 380.11a(4). Great Lakes engages in the processing, warehousing, and delivery of federal surplus food commodities for student meals under the NSLA. For the 2006-07 school year, Great Lakes would be responsible for $12,362,616.80 of commodity entitlements.

The MDE's Office of School Support Services oversees and administers various food distribution programs, including the distribution of federal surplus commodity foods under the NSLA and its implementing regulations. Each year the USDA delivers to each state an amount calculated by statutory formula. 42 U.S.C. § 1755(b), (c). The State is a

"distributing agency" under the NSLA.  *See* 7 C.F.R. § 250.3.  Great Lakes is a "school food authority," "recipient agency," "distributing agency," and "contracting agency" under the NSLA.  *Id.*  Because of its size, Great Lakes is able to receive direct shipments from the USDA, rather than have those shipments come through the State first.

Northern and the State entered into a requirements contract, under which Northern was retained by MDE as the primary distributor of commodities in Regions 1 and 3 in the State.  The contract (Comp. Ex. A-3) provided, however, that "some recipients may have sufficient volume as to allow direct shipment from USDA.  Direct shipment to recipients shall be at the discretion of MDE."  (*Id.*, Sec. II-A.)

On December 23, 2004, Northern sued the State Defendants, Great Lakes, and SPARC (another public school cooperative) in the Michigan Court of Claims, asserting promissory estoppel and various tort claims against the MDE and State and further asserting that Great Lakes was an illegal entity. On January 14, 2005, Great Lakes and SPARC were dismissed from the litigation by stipulation.  The litigation continued, and the Court of Claims issued a preliminary injunction requiring the State to cease and desist administering Great Lakes and other public school food cooperatives, except for the 15 original pilot program members previously existing. (Compl. Ex. A-7.)  The Court of Appeals affirmed.  (Compl. Ex. A-8.)  However, on May 24, 2006, the Michigan Supreme Court summarily reversed, holding that a claim of promissory estoppal was not cognizable on a contract with an integration clause. (Compl. Ex. A-9.)  The Supreme Court stayed the injunction and

5

remanded. On remand, the Court of Appeals, after considering the remaining claims, denied the injunction. (Compl. Ex. A-10.) Thereafter, on October 30, 2006, the Court of Claims granted Defendants' motion for summary judgment. (Compl. Ex. A-11.)

After winning in the Court of Claims, the State entered into a Resolution Agreement with Northern, under which Northern waived its rights to appeal. The State granted Northern a 54% increase in its contract price for delivery during the remaining period of the contract. Paragraph 5 of the Resolution Agreement provided as follows:

> 5. School Districts Subject to Price Increase
>
> Attachment A identifies the school districts that will be serviced by Northern Warehousing, Inc. for the remaining duration of Contract No. 071B2001531. The identified districts are subject to the price increase.

(Compl. A-13.) Attachment A to the Resolution Agreement, however, mistakenly identified all school districts in Regions 1 and 3, including the school districts that were part of a cooperative, the very issue the State had just litigated and won. Although it does not affirmatively dispute that the attachment was a mutual mistake, Northern has taken the position that it is entitled to make all deliveries in the regions and that the State cannot authorize direct shipments to Great Lakes and other cooperatives.

After Northern advised the State Defendants of its position, on October 23, 2006, the MDE issued a memorandum to all school districts in Regions 1 and 3, stating that it had made an "inadvertent error" and that, in light of Northern's argument, all districts in Regions

6

1 and 3 were required to obtain commodities from Northern. (Compl. Ex. A-14.) The MDE then ceased authorizing the direct shipments to Great Lakes.

On November 10, 2006, Great Lakes filed the instant action in the Traverse County Circuit Court.

## II.

Intervenor Defendant has moved to dismiss the federal cause of action under the NSLA for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6), and to dismiss the remaining state claims for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1).

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations repecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint fails to state a claim upon which relief can be granted when it is

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

  A. <u>Private Right of Action Under NSLA</u>

Intervenor Defendant contends that Plaintiff's complaint should be dismissed because the sole federal claim under the NSLA fails to provide a private right of action to enforce the statute. The parties agree that the NSLA does not provide an express right of action. Instead, Plaintiff contends that an implied right of action exists under the statute.

In *Cort v. Ash*, 422 U.S. 66, 78 (1975), the Supreme Court outlined the four factors to be considered by a court in determining the existence of an implied statutory right of action:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted, that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Care Choices HMO v. Engstrom*, 330 F.3d 786, 788-89 (6th Cir. 2003). Since *Cort*, the Supreme Court has emphasized that the "'central inquiry' is 'whether Congress intended to create, either expressly or by implication, a private cause of action.'" *Care Choices*, 330 F.3d at 789 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). *See also Alexander v. Sandoval*, 532 U.S. 275, 286 (2001); *California v. Sierra Club*, 451 U.S. 287,

293 (1981). The inquiry requires both that Congress intended to confer a private right on a particular beneficiary, but also that Congress intended to confer a private remedy. *Sandoval*, 532 U.S. at 286 (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 445 U.S. 11, 15 (1979)). As the Sixth Circuit has recognized, courts do not lightly imply a private right of action. *See Care Choices*, 330 F.3d at 789 (citing *Touche Ross*, 442 U.S. at 571 (noting that implying a private right of action "is a hazardous enterprise, at best")); *Thomas M. Cooley Law Sch. v. Amer. Bar Ass'n*, 459 F.3d 705, 711 (6th Cir. 2006 ) (considering right of law school to enforce provisions of Higher Education Act and stating that court "will 'not [] infer the existence of private rights of action haphazardly.'") (quoting *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000)).

### 1.     Entity especially benefitted by NSLA

Plaintiff contends that it meets the first prong of the *Cort* standard because it is an entity especially benefitted by the NSLA. First, it cites the clear statement of Congressional intent set forth in 42 U.S.C. § 1751:

> It is declared to be the policy of Congress, as a measure of national security, to safeguard the health and well being of the Nation's children and to encourage the domestic consumption of nutritious agriculture commodities and other food, by assisting the States, through grants-in-aid and other means, in providing an adequate supply of foods, and other facilities *for the establishment, maintenance, operation, and expansion of non-profit school lunch programs*.

*Id.* (emphasis supplied by Plaintiff). Plaintiff argues that the statement of policy indicates Congress' intent in enacting the NSLA was to benefit non-profit school lunch programs, as

9

operated and administered by Plaintiff and its members. Although Plaintiff concedes that the ultimate declared beneficiaries of the statute are, on the face of the statute, the Nation's children, it argues that, because the policy provision mentions the vehicle for serving the beneficiary as non-profit school lunch programs, those programs are themselves especial beneficiaries of the legislation upon whom a right has been conferred.

Second, Plaintiff argues that 42 U.S.C. § 1755a provides for federal fund appropriation "to be distributed among the States and schools and service institutions participating in the food service programs under this chapter and under the Child Nutrition Act of 1966 in accordance with the needs as determined by the local school and service institution authorities." That express direction, it argues, indicates Congressional concern that local school authorities exercise some control in the distribution of federal funds related to food service programs.

Third, Plaintiff directs the Court to 42 U.S.C. § 1762a(d), which requires the USDA to establish procedures under which the

> views of local school districts and private non-profit schools with respect to the type of commodity assistance needed in schools are fully and accurately reflected in reports to the Secretary by the State with respect to State commodity preferences and that such views are considered by the Secretary in the purchase and distribution of commodities and by the States in the allocation of such commodities among schools within the States . . . .

*Id. See also* 42 U.S.C. § 1762a(d)(4) (expressly providing for "systematic review of the costs and benefits of providing commodities of the kind and quantity that are suitable to the needs of local school districts and private non-profit schools . . . .")

The Court concludes that the cited provisions, while demonstrating concern with the delivery of foods to school lunch programs, are insufficient to support an enforceable right. Although Plaintiff may be a beneficiary under the statute, it can point to no indication that Congress intended to confer an especial benefit upon it. As the Supreme Court has indicated, Congress must demonstrate an intent in the statute to confer an enforceable right; it is not sufficient for a party to merely receive benefits under the statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (recognizing that the standard for determining Congressional intent to create an enforceable right is identical under implied-right-of-action cases and cases governing enforceability of statute under § 1983).

Here, Plaintiff fails to demonstrate the requisite Congressional intent to create an enforceable right in the language of the statute itself. Instead, the direction of the statute is toward the regulation of the agency administering the federal food program. *See Blessing v. Freestone*, 520 U.S. 329, 343 (1997) (finding no enforceable right where the statutory requirements principally govern state compliance with federal requirements as the method to ensure timely payment of child support); *Gonzaga*, 536 U.S. at 282-83. Even if Plaintiff may demonstrate a violation of federal law by the State's actions to strip local school district preferences in delivery systems, it cannot demonstrate that the statute was intended to create the requisite enforceable right. *See*, No. 85 C 8349, 1989 WL 106610 (N.D. Ill. Sept. 11, 1989) (applying *Cort* standard to find no private right of action under NSLA and multiple

11

other statutes); *Cole v. Forest Park Sch. Dist. 91*, No. 06 C 1087, 2006 WL 1735252 (N.D. Ill. June 19, 2006) (no private right of action under NSLA).[2]

Plaintiff argues, however, that regulations promulgated under the statute, *see* 42 U.S.C. § 1779(a), demonstrate the necessary intent to create an enforceable right and remedy. Specifically, Plaintiff asserts that it is a "school food authority," as well as a "contracting agency" and "distributing agency," as defined by 7 C.F.R. § 250.3. As a distributing agency, Plaintiff "is responsible for effective and efficient administration of program operations within its jurisdiction and shall administer the program in accordance with the requirements of this part and FNS guidelines and instructions." 7 C.F.R. § 250.2(b). As a consequence of the extensive responsibilities imposed by the regulations, Plaintiff argues that a private right of action must be inferred. In addition, Plaintiff suggests that, because another part of the regulations specifically excludes a private right of action for certain violations of the regulations, *see* 7 C.F.R. § 246.12(g)(4)(vii), but is silent with respect to the violations in 7 C.F.R. § 250.1 *et seq.*, the existence of a private right of action should be inferred. *See Warner v. Zent*, 997 F.2d 116, 137 (6th Cir. 1993) ("[S]pecific mention of one thing in a statute implies an intent on the part of the legislature to exclude another.")

---

[2]Intervenor Defendant cites two additional cases supporting its claim that no private right of action exists under the statute. *See Sowell's Meats and Servs., Inc. v. McSwain*, 788 F.2d 226 (4th Cir. 1986); *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist.*, 952 F.2d 1173, 1177 (9th Cir. 1992). Although both cases summarily deny Congressional intent to create a private right of action, they do so in passing while addressing the question of standing. Neither considered the applicable Supreme Court standard. Accordingly, they are of limited assistance in this Court's analysis.

Plaintiff's argument rests on its contention that, under *Ashbrook v. Block*, 917 F.2d 918, 926 (6th Cir. 1990), a private right of action may be implied by a regulation. As the courts recently have made clear, however, an enforceable right may not be inferred from regulations alone. *See Sandoval*, 532 U.S. at 293 ("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not."); *Johnson v. City of Detroit*, 446 F.3d 614, 628-29 (6th Cir. 2006) (holding that prior Sixth Circuit decisions to the contrary, the Supreme Court decisions in *Sandoval*, 532 U.S. 273, and *Gonzaga*, 536 U.S. 273, preclude the court from finding a private enforceable right from regulations alone); *Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 618-19 (6th Cir. 2005) (same). Inasmuch as the Court has concluded that the statutory text is inadequate to create a private enforceable right, no such right may be implied from the regulations.

In sum, upon careful review, the Court concludes that Plaintiff has failed to demonstrate the first prong of the *Cort v. Ash* standard by failing to point to clear Congressional intent to create a private enforceable right.

### 2.   Intent to create a private remedy

Assuming that Plaintiff had demonstrated that Congress intended to create an enforceable right, Plaintiff fails to demonstrate an intent to create a private remedy. "[E]ven where a statute is phrased in such explicit rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just

13

a private *right* but also a private *remedy*.'" *Gonzaga*, 536 U.S. at 284 (quoting *Sandoval*, 532 U.S. at 286). Absent clear indication of Congressional intent to create a private remedy, the agency is without authority to create such a remedy under the regulations. *Sandoval*, 532 U.S. at 286.

In support of its claim that Congress intended to create a remedy, Plaintiff does no more than to argue that such a remedy would be consistent with the federal legislative and regulatory scheme. Such argument fails to identify clear Congressional intent. *See Johnson*, 446 F.3d at 627 (rejecting plaintiff's argument that, because implication of a remedy would not be inconsistent with the regulatory scheme, such remedy should be implied); *Sandoval*, 532 U.S. at 286 ("Without [statutory intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute."). Moreover, as previously discussed, regulations expressly foreclosing other types of claims under the statute cannot imply anything absent statutory intent. *Sandoval*, 532 U.S. at 293.

Accordingly, Plaintiff has failed to demonstrate either an enforceable private right or private remedy under the NSLA. For both reasons, Count 3 of the complaint must be dismissed for failure to state a claim.

    B.    <u>Motion to Amend Complaint</u>

Plaintiff moves to amend its complaint to add a claim under to 42 U.S.C. § 1983, alleging that the State violated its right to due process by acting to terminate its NSLA rights

14

without notice or opportunity to be heard. As the Court previously has discussed, the Supreme Court has now made clear that the standard for determining whether Congress has created a federal right enforceable under § 1983 is the same as the standard under the first prong of the private-right-of-action cases: whether Congress intended to create an enforceable federal right. *See Gonzaga*, 536 U.S. at 284 ("[O]ur implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983."); *Johnson*, 446 F.3d at 619. Because the Court has determined that Plaintiff has failed to demonstrate that Congress intended to create an enforceable federal right under the *Cort v. Ash* standard, it necessarily has failed to demonstrate a right enforceable under § 1983. As a consequence, amendment of the complaint to add a federal due process claim under § 1983 would be futile. Accordingly, Plaintiff's motion to amend will be denied.[3]

    C.    <u>Supplemental State-Law Claims</u>

In addition to its federal claims, Plaintiff raises a variety of state common law and state constitutional claims. Intervenor Defendant contends that this Court does not have the discretion to exercise jurisdiction over Plaintiff's state-law claims. It argues, citing *Haddad v. Fromson*, 154 F. Supp. 2d 1085 (W.D. Mich. 2001), that the Michigan Attorney General

---

[3]Plaintiff's motion to amend also seeks to add a state-law claim to reform the Resolution Agreement. Leaving aside the question of Plaintiff's standing to challenge a contract to which it is not a party, amendment would be futile in light of the Court's disposition of the question of its jurisdiction over supplemental state-law claims, *infra*.

lacks the authority under Michigan law to waive the State Defendants' Eleventh Amendment immunity by removing the action to federal court.

The reasoning of *Haddad*, however, is no longer good law. In *Lapides v. Bd. of Regents of the Univ. Sys. of Georgia*, 535 U.S. 613 (2002), the Supreme Court squarely held that a state's action to remove a suit to federal court constituted an unequivocal waiver of its Eleventh Amendment immunity. Therefore, by removing the instant action to this Court, the State of Michigan Defendants have waived their Eleventh Amendment immunity to suit.

As a result, this Court also is not barred by the doctrine of *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), from considering Plaintiff's state-law claims for prospective injunctive relief. In *Halderman*, the Supreme Court ruled that federal courts are without jurisdiction to order a state to comply with its own laws or constitution. *Id.* at 124-25. The basis for the Supreme Court's holding in *Halderman*, however, was grounded in the doctrine that such an order would violate the State's Eleventh Amendment immunity. The *Halderman* Court specifically acknowledged that Eleventh Amendment immunity could be waived by a state by consenting to suit in federal court. *Id.* at 99. Where, as here, that immunity has been waived by removal, the Court is not barred from granting relief on the state-law claims raised by Plaintiff.

Nevertheless, a district court has discretion to remand a removed case when all federal claims have been dismissed and all that remains are state-law claims within the pendent jurisdiction of the court. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *Long v.*

*Bando Manufacturing of America, Inc.*, 201 F.3d 754, 761 (6th Cir. 2000). In exercising that discretion, the district court is to consider the "principles of economy, convenience, fairness and comity which underline the pendent jurisdiction doctrine." *Carnegie-Mellon*, 484 U.S. at 357. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits. *See Landefeld v. Marion General Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991).

In the instant case, the Court declines to exercise its discretion to retain jurisdiction. Plaintiff clearly intended for its state-law claims to be litigated in the state courts. Moreover, the principle of comity favors the disposition of state-law claims by the state courts. The majority of the claims in issue in the case invoke novel applications of state law. Further, although this action has consumed significant resources in this Court, the action remains at the preliminary injunction stage. Finally, the instant action does not present all of the relevant claims between the parties. Although Plaintiff may have legitimate claims against the State for its conduct in terminating direct deliveries of commodities to Plaintiff in order to meet their perceived and unintended obligations under the Resolution Agreement, those claims are not determinative of whether the State is liable to Intervenor Defendant for violation of the Resolution Agreement. Regardless of this Court's disposition of Plaintiff's

claims, therefore, the State Defendants and Intervenor Defendant will continue to require significant judicial action to determine their relative obligations.

For all these reasons, the Court therefore does not find that judicial economy will be significantly served by the continued exercise of jurisdiction over Plaintiff's state-law claims. Accordingly, Plaintiff's state-law claims will be remanded to the Traverse County Circuit Court.[4]

### III.

For the foregoing reasons, the preliminary injunction issued December 29, 2006 (docket #27) is **DISSOLVED**. Northern's motion to dismiss (docket #47) is **GRANTED** as to Plaintiff's federal claim under the NSLA. Plaintiff's second motion to amend the complaint (docket #56) is **DENIED**. Plaintiff's remaining state-law claims are **REMANDED** to the Traverse County Circuit Court.

An Order and Judgment consistent with this Opinion shall issue.


Date:     March 27, 2007              /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      CHIEF UNITED STATES DISTRICT JUDGE

---

[4]In light of the Court's disposition of the motion to dismiss and the motion to amend, the issue of continuing the preliminary injunction is now moot. The preliminary injunction therefore will be dissolved.